Filed 11/28/23  P. v. Mota CA4/2
Review denied 3/12/24; reposted with Supreme Court order and statement

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079971 |
| v. | (Super.Ct.No. RIF74296) |
| SALVADOR GARCIA MOTA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

1

At a resentencing hearing pursuant to Penal Code section 1172.75,[1] the court denied defendant and appellant's, Salvador Garcia Mota, motion to strike his prior strike conviction findings pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). On appeal, defendant contends the court abused its discretion. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[2]

On July 31, 1978, the victim sat in a parked car waiting for friends. After her friends got into the car and her boyfriend turned on the ignition, defendant and his companion, armed with a revolver and a knife respectively, approached the car. After robbing the occupants of their valuables, they opened the car door and pulled the victim out. While defendant held his revolver to the victim's back, he and his companion led her to a waiting van. (*People v. Mota* (1981) 115 Cal.App.3d 227, 230 (*Mota II*).)

Once in the van, defendant and his companion forced the victim to lie on a mattress. Defendant, his companion, and another man then subjected her to multiple acts of forced sexual intercourse. While defendant was engaged in intercourse, the other two men fondled her breasts and genitals. (*Mota II*, *supra*, 115 Cal.App.3d at p. 230.)

They then drove the van to a secluded area. At approximately 1:00 a.m. on August 1, a security officer observed the parked van and approached to investigate. The

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] On the court's own motion, we take judicial notice of our prior nonpublished opinion in defendant's appeal from the original judgment, which was attached to the People's opposition to defendant's *Romero* motion. (*People v. Mota* (June 25, 1999, E023277) [nonpub. opn.] (*Mota I*).) (Evid. Code, §§ 452, 459; Cal. Rules of Court, rule 8.1115(b).)

2

van sped off; the officer pursued and eventually succeeded in getting the van to pull over. The victim "jumped out of the van and ran to the officer, exclaiming, 'Thank God, you saved my life. I've just been raped.' " (*Mota II*, *supra*, 115 Cal.App.3d at p. 230.)

The driver was immediately arrested; defendant and his companion were apprehended at the location to which they had fled when the van stopped. "A subsequent search of the van revealed a loaded revolver, two knives, the items taken in the robbery, and [the victim's] pantyhose." (*Mota II*, *supra*, 115 Cal.App.3d at p. 231.)

A jury convicted defendant of kidnapping (former § 207, count 1), three counts of robbery (§ 211, counts 3 through 5), and three counts of rape (former § 261, subds. 2, 3, counts 6 through 8.). The jury additionally found true enhancement allegations that defendant used a firearm (former §§ 12022.5 & 1203.06, subd. (a)(1)) and that a principal was armed with a firearm (former § 12022, subd. (a)) in the commission of the kidnapping and robberies. The court sentenced defendant to prison for 12 years. (*Mota II*, *supra*, 115 Cal.App.3d at pp. 229-230.)

Defendant appealed. The appellate court modified defendant's sentence by reducing it from 12 to 10 years of imprisonment. The appellate court otherwise affirmed the judgment. (*Mota II*, *supra*, 115 Cal.App.3d at p. 235.)

"On May 16, 1997, defendant was apprehended while shoplifting a pair of jeans from a Mervyn's store in Corona." A jury found defendant guilty of petty theft with a prior conviction. (Former § 666, count 1.) The court thereafter found true allegations that defendant had suffered five prior strike convictions (former §§ 667, subds. (c) & (e),

1170.12, subd. (c)), and a prior prison term (former § 667.5, subd. (b)).  The court sentenced defendant to a term of 25 years to life plus 1 year for the prior prison term. (*Mota I*, *supra*, E023277.)

Defendant appealed, contending, as pertinent here, that the court abused its discretion in refusing to grant his *Romero* motion.  Defendant had asked the court below, and this court, to consider the following factors:  "(1) the current offense was neither violent nor serious, and the merchandise was returned to the store; (2) . . . defendant's prior convictions arose out of a single case over 19 years [earlier]; (3) defendant was young when he committed the crimes;[3] and (4) his behavior since the priors has not been 'serious.' "  (*Mota I*, *supra*, E023277.)

This court rejected defendant's contention, noting defendant had been convicted of five felonies in 1978.  "After being discharged from state prison in 1986, defendant continued his criminal activities.  Between the years of 1989 and 1992, defendant was consecutively convicted of misdemeanor charges.  Even while in jail in 1992, defendant received a conviction for possession of a controlled substance by a prisoner.  During his probation period, defendant committed a new crime and was sent to state prison, where he remained until 1995.  In other words, defendant has demonstrated a continuous pattern of criminal behavior which belies any suggestion that he has yet changed his ways."  This court affirmed the judgment.  (*Mota I*, *supra*, E023277.)

---

**3**  Defendant was 18 years old at the time he committed the offenses.

On March 28, 2022, the court struck defendant's prior prison term enhancement pursuant to former section 1171.1, reducing defendant's sentence by one year. The court set the matter for hearing on an intended *Romero* motion.

On August 1, 2022, defense counsel filed an invitation for the court to dismiss defendant's prior strike conviction findings pursuant to *Romero*. Defense counsel argued that defendant fell outside the spirit of the three strikes law, and that the following factors supported dismissing defendant's prior strike conviction findings: (1) the nature and circumstances of the present offenses; (2) the remoteness of the prior convictions; (3) defendant's youth and remote remaining criminal history; (4) his background, character, and prospects; and (5) postconviction factors including his disciplinary record, record of rehabilitation, and reduced physical risk for future violence. On September 21, 2022, the People filed opposition to the motion in which they argued the court should decline defendant's invitation to strike his prior strike conviction findings.

At the hearing on the *Romero* motion on October 5, 2022, the court indicated it had read the moving papers. Defendant's niece made a statement that defendant "is truly changed." "[H]e doesn't make excuses for what he has done, and he accepts responsibility." Defendant would have all their family's support; he could stay with her, her mother, or her aunt. They would help him find work and obtain a driver's license. "He is tired of living the life that he has been living for the last two decades, . . ."

Defendant also made a statement: "I would like to apologize to the Court, the community of Riverside . . . for being a burden and for stealing a pair of pants 25 years

5

ago to support my drug habit." "I stopped using drugs 12 years ago. I will be sober and clean, with the help of the A.A. mentors/sponsors that I met." "I left my gang ties 12 years ago." "Finding a job won't be a problem for me. I am a pipefitter by trade in the oil—in the oil industry, and I learned how to weld, electrical, and hydraulic—hydraulic machinery in VIA." "I'm going to continue doing the A.A. meetings. I'm 62 years old now. I'm tired of the life that I had before. I gave it up." "If the Court gives me an opportunity of freedom, I won't be a disappointment to the Court, the community, or my family." "I'm tired and worn out, really. And I realize that the laws and rules are meant to be kept, and I'm going to keep them. I've been keeping them for the last 12 years."

Defense counsel noted that defendant was in "the lowest level of classification and placement score. He can't go any lower. I found seven violations. Four were for one—or three were alcohol possession, one was drugs back in 2003/2004, three for fighting, two were in 2011 and 2012, and then he had one in 2018." Defense counsel noted that the court should consider the fact that defendant had been rehabilitated, that he had "gone to classes, employment, education." That defendant's age and diminished capacity also militated toward granting the motion: "He has issues with liver [cirrhosis]. I have read [*sic*] medical records of cataracts. So it's not only looking at what he has chosen to do, but just his physical condition itself." That "keeping someone in [prison] longer that doesn't pose" a risk to the public is against the intent of subsequent remedial legislation.

The court reviewed the law with respect to *Romero* motions.  It noted that in addition to the relevant considerations when the first *Romero* motion was made, it had to consider what subsequently happened in state prison.  The court was "mindful of my responsibilities, and my discretion, and I am mindful of the things that I am supposed to balance."  It noted that it had to consider the facts and circumstances of the strike convictions.

The court observed, "Here they are as bad as they can be.  Without them being homicides, they are as bad as they can be."  "[T]here were multiple victims here, . . ."  "And, generally, when there are multiple victims, I'm much, much less inclined to strike strikes that arise out of the same fact pattern."

"When you talk about his youthful age, let's assume that that is part of [the] analysis because it's—it's part of the facts and circumstances of the strike, . . ."  "But when we are talking about a person who has not only committed an offense, a prior offense, but had been to state prison for that prior offense, their youthful nature on the occasion of the incident offense, is much less amenable."  "If at any time his youthful nature played a role, it should have been back when we were talking about the strike offense.  Because I think he was 18 at the time of the strike offense."  "I know that you mentioned [the] strikes [were] 43 years old, but they certainly were not 43 years old at the time of the incident events.  They were much younger than that."

The court concluded that the only remaining analysis was whether defendant had performed so well in prison that he warranted the relief requested.  The court noted

several instances where the court had exercised its discretion to strike prior convictions or enhancements where the defendant's behavior in prison was exemplary.  However, "[w]hen I look at this particular gentleman, I cannot ignore [seven] different . . . rules violations[.]"  "I certainly can't ignore the last one, which was just in 2018, which, for better or worse, he was charged with assault with a deadly weapon in jail."

"Under these circumstances, the Court is not prepared to find that he falls outside the spirit of our three-strikes law, notwithstanding, the lengthy period of incarceration, and, notwithstanding, some of his physical impairments that have developed by virtue of him becoming older."  "On balance, I do not find that he falls outside the spirit of our three-strikes legislation.  For that reason, the Romero motion is denied at this time."

## II.  DISCUSSION

Defendant contends the court abused its discretion in denying his *Romero* motion. He maintains the court violated his due process rights by failing to act with informed discretion.  We disagree.

"Senate Bill No. 483 added section 1171.1 to the Penal Code, which was subsequently renumbered without substantive change as section 1172.75.  (Stats. 2022, ch. 58, § 12, eff. June 30, 2022.)  Section 1172.75, subdivision (a) provides that '[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid.'  [Citation.]  Once the Department of Corrections and Rehabilitation identifies those persons 'currently serving

8

a term for a judgment that includes an enhancement described in subdivision (a)' to the sentencing court, 'the court shall recall the sentence and resentence the defendant.' [Citation.]" (*People v. Monroe* (2022) 85 Cal.App.5th 393, 399 (*Monroe*).)

"In resentencing, '[t]he court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.' [Citation.] 'The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice.' [Citation.]" (*Monroe*, *supra*, 85 Cal.App.5th at p. 399.) "By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*Id.* at p. 402 [reversing and remanding for resentencing where court thought it was without jurisdiction to strike firearm enhancements]; see *People v. Hubbard* (2018) 27 Cal.App.5th 9, 12-13 [full resentencing includes jurisdiction to rule on *Romero* motion].)

" ' "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material

9

aspect of a defendant's record." ' [Citation.]" (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 988; accord, *People v. Lopez* (2022) 78 Cal.App.5th 459, 466-467.)

"While the purpose of the Three Strikes law is to punish recidivists more harshly [citation], not all recidivists fall within the spirit of that law. A trial court therefore may strike or dismiss a prior conviction in the furtherance of justice. [Citations.] When considering whether to strike a prior conviction, the factors a court considers are whether, in light of the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of the defendant's background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though the defendant had not previously been convicted of one or more serious and/or violent felonies. [Citation.]" (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1140 (*Avila*).)

"We review a trial court's ruling on a *Romero* motion under the deferential abuse of discretion standard, which requires the defendant to show that the sentencing decision was irrational or arbitrary. [Citation.] It is not enough that reasonable people disagree about whether to strike a prior conviction. [Citation.] The Three Strikes law 'not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.' [Citation.] Only extraordinary circumstances justify finding that a career criminal is outside the Three Strikes law. [Citation.] Therefore, 'the circumstances where no reasonable people could

10

disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary.' [Citation.]" (*Avila*, *supra*, 57 Cal.App.5th at p. 1140.)

Here, the court acted within its circumscribed discretion in denying defendant's motion to strike his prior strike conviction findings. The court indicated it understood its discretion and went over the law that it was to apply when rendering a decision. The court noted that the offenses underlying the strike convictions, except for murder, were "as bad as they can be." Since those offenses included kidnapping, the robbery of multiple victims at gunpoint, and the gang rape of the victim, the court's conclusion was well within its discretion. We note that although defendant apologized for his theft of a pair of jeans in his statement to the court, he did not apologize for the robberies, rape, and kidnapping.

The court noted that although the strike offenses were 43 years old, they were not that old when defendant committed the offense to which the findings based on those offenses were attached. Indeed, the strike offenses were less than 20 years old when defendant committed the instant offense. Moreover, defendant had spent seven and one-half of those years in prison for the strike offenses. Defendant thereafter was convicted of six misdemeanors and one felony. Defendant committed the first misdemeanor the year after he was released. He served another two years in prison for the felony offense. "In other words, defendant has demonstrated a continuous pattern of criminal behavior which belies any suggestion that he has yet changed his ways." (*Mota I*, *supra*, E023277.)

11

The court next noted that defendant did not exactly have a sterling prison record. As the court pointed out, defendant had seven rule violations while in prison. Moreover, one of the rule violations, which occurred on December 13, 2018, included an allegation of assault or battery with a deadly weapon. During that offense, the correctional officer observed defendant, with two other inmates, "striking an inmate . . . in the upper torso and facial area multiple times with his fists." The officer recovered a metal shiv from one of the other inmates. Defendant was found guilty of battery with a deadly weapon.**⁴** Defendant's prison record further supported the court's ruling. Thus, the court acted within its discretion in denying defendant's *Romero* motion.

Defendant complains that the court abused its discretion by finding defendant's youth irrelevant, and by failing to mention his substance abuse, childhood trauma, and postconviction efforts at rehabilitation. First, the court acknowledged defendant's youth when defendant committed the offenses underlying the prior strike conviction findings; it simply found that the nature and circumstances of those offenses were so serious that they substantially reduced the weight it would attach to defendant's youth in its analysis. That determination was well within the court's discretion.

Second, the court's "failure" to address each specific factor raised by defendant to support his motion is not a due process violation or an abuse of its discretion. (See *In re*

---

**4** At oral argument, defense counsel argued that defendant had no record of *conviction* for committing violent offenses since his commission of the strike offenses. Although true, defendant was found guilty of a *prison rule violation* of battery with a deadly weapon, a definitionally violent offense. (§ 242 ["A battery is any willful and unlawful use of force or *violence* upon the person of another."].)

*Marriage of Diamond* (2021) 72 Cal.App.5th 595, 602 [Where a statute requires a court to consider certain factors when rendering a decision, the court is not required to *expressly* address each factor unless the statute specifically so requires.]; *People v. Nevill* (1985) 167 Cal.App.3d 198, 202 [sentencing court is presumed to have considered all relevant factors even if not expressly articulated].)

Here, as discussed *ante*, the court made it amply clear that it had read the parties moving papers, knew the law, and understood its discretion in ruling on the motion. We presume that the court properly considered all relevant criteria when rendering its decision.[5] Thus, the court acted within its discretion in denying defendant's *Romero* motion.

---

[5] At oral argument, defense counsel argued this court should consider that defendant's strike offenses were "aberrant," that his offenses were related to his long-standing substance abuse issues, and that defendant's circumstances had changed. Again, to the extent that the trial court did not specifically mention the purported "aberrance" of the strike offenses, his substance abuse issues, or his efforts at rehabilitation, we presume the court considered all relevant facts absent evidence indicating otherwise.

## III.  DISPOSITION

The court's order denying defendant's *Romero* motion is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.


We concur:


MILLER
J.


CODRINGTON
J.

Court of Appeal, Fourth Appellate District, Division Two - No. E079971

**S283230**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

THE PEOPLE, Plaintiff and Respondent,

v.

SALVADOR GARCIA MOTA, Defendant and Appellant.

_____

The petition for review is denied.


(See Concurring Statement by Justice Groban.)


_____

Guerrero
*Chief Justice*

PEOPLE v. MOTA
S283230


Concurring Statement by Justice Groban


On May 16, 1997, defendant Salvador Garcia Mota was apprehended while shoplifting a $38 pair of jeans from a Mervyn's store. A jury found defendant guilty of petty theft. (Pen. Code, former § 666.) Approximately 20 years earlier, defendant — then a teenager — suffered several prior strike convictions arising out of a serious and violent crime that resulted in a 10-year sentence. Because of those prior strike convictions, defendant was sentenced to 25 years to life in prison under the three strikes law for the offense of shoplifting.

At a resentencing hearing pursuant to Penal Code section 1172.75, the court denied defendant's motion to strike his prior strike conviction findings pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. In support, the court relied primarily on the severity of the crime defendant committed as a teenager some 45 years ago. Under the highly deferential standard of review governing *Romero* motions, I agree with the Court of Appeal's conclusion that we cannot say the decision was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) I therefore join my colleagues in voting to deny review. The troubling fact remains, however, that defendant, now in his mid-60s and suffering from numerous medical ailments, has spent over 27 years in prison for stealing a pair of jeans — conduct that can be sentenced as a misdemeanor under current law.

(See Pen. Code, §§ 490; 666.) By comparison, the median time served in state prison before initial release for murder is 17.5 years. (Bureau of Justice Statistics, U.S. Dept. of Justice, Time Served in State Prison, 2018 (Mar. 2021) table 1, p. 2.)

I write separately to highlight that our denial of the petition for review does not necessarily preclude defendant from obtaining relief at some point in the future, including:

(1) a potential referral for recall and resentencing by the Secretary of the Department of Corrections and Rehabilitation, the Board of Parole Hearings, or the district attorney (see Pen. Code, § 1172.1, subd. (a)(3) ["The resentencing court may, in the interest of justice and regardless of whether the original sentence was imposed after a trial or plea agreement," reduce or vacate the sentence]);

(2) at a future parole suitability hearing (see Cal. Code Regs., tit. 15, § 2281, subd. (b) ["All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include . . . the base and other commitment offenses"]; Pen. Code, § 4801, subd. (c));

(3) pursuant to a commutation recommendation (see Pen. Code, § 4801, subd. (a) ["The Board of Parole Hearings may report to the Governor, from time to time, the names of any and all persons imprisoned in any state prison who, in its judgment, ought to have a commutation of sentence or be pardoned and set at liberty on account of good conduct, *or unusual term of sentence*, or any other cause . . . ." (italics added)].

**GROBAN, J.**

**We Concur:**
**LIU, J.**
**EVANS, J.**